IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Becky J. Roberts,   Case No. 3:10 CV 2515

  Plaintiff,   MEMORANDUM OPINION
AND ORDER

  -vs-

  JUDGE JACK ZOUHARY

Mestek, Inc.,

  Defendant.

## INTRODUCTION

This is an age discrimination case brought by Becky Roberts against Mestek, Inc., her former employer. Plaintiff alleges Defendant terminated her because of her age in violation of the Age Discrimination in Employment Act ("ADEA") and Ohio Revised Code § 4112. Age discrimination claims brought under Ohio law are subject to the same analysis as federal ADEA claims. *See, e.g.*, *Coryell v. Bank One Trust Co.*, 101 Ohio St. 3d 175, 179 (2004); *see also Barnes v. Gen Corp., Inc.*, 869 F.2d 1457, 1465 (6th Cir. 1990).

Defendant moves for summary judgment (Doc. No. 21), Plaintiff opposes (Doc. No. 72) and Defendant has replied (Doc. No. 82). For the reasons set forth below, Defendant's Motion is granted.

## BACKGROUND

Defendant is a large manufacturing company that employs approximately 1,500 union and non-union employees in several states, including Ohio. Defendant's operations include American Warming and Ventilating Division ("AWV") which is responsible for the production of air control and ventilation systems for schools, hospitals, and commercial buildings (Doc. No. 22-2 at 11). Plaintiff worked for Defendant's AWV Division at its Bradner, Ohio facility.

Plaintiff began working for Defendant in 1974 as a non-union office employee (Doc. No. 20-1 at 2). In 1997, she was promoted to Administrative Assistant/Human Resources, where her job tasks were concentrated in two main areas: human resources administration and secretarial responsibilities (Doc. No. 20-1 at 3). Plaintiff was responsible for all human resource functions for hourly employees (approximately 110 union employees), including completion of paperwork and testing for new hires, administration of time cards, benefits, disciplinary actions, vacation requests, and absences (Doc. No. 20-1). Plaintiff was also responsible for administering worker's compensation claims, as well as any requests for medical leave under the Family Medical Leave Act ("FMLA") (Doc. No. 20-1). Plaintiff remained employed in this capacity until her termination in July 2009 (Doc. No. 72-9).

In 2007, Defendant closed its AWV Division in Waldron, Michigan, and subsequently transferred its work to the Bradner facility (Doc. No. 22-3, n.4). This consolidation resulted in additional work for Plaintiff, and substantial overtime. Plaintiff requested an assistant and Teresa Swaisgood was hired to assist. Swaisgood, who was forty-one (41) years old when hired, was originally employed as a temporary part-time employee, and her job duties included filing, inputting data, and assisting with the ship log (Doc. No. 46). Swaisgood later was promoted to a permanent part-time position, but her responsibilities remained the same.

In October 2008, Plaintiff required extended medical leave for back surgery (Doc. No. 20-1 at 17). In anticipation of her leave, Plaintiff trained Swaisgood to perform a number of her human resource and secretarial tasks (Doc. No. 20-1 at 10). Any functions not assumed by Swaisgood were reassigned to others in the company. For instance, Randy Meyers, a quality and safety supervisor responsible for plant environment and health and safety issues, took over all worker's compensation matters (Doc. No. 20-1 at 9). Rebecca Forget, the Corporate Human Resources Manager, assumed responsibility for FMLA and short-term disability requests and claims (Doc. No. 70 at 27).

2

Simultaneously in 2008, Defendant experienced reduced sales and profitability (Doc. No. 22-1 at 2). In an effort to improve its financial position, Defendant undertook a review of its operations -- a review that included the AWV Division and the Bradner facility (Doc. No. 22-1 at 2). By the time Plaintiff returned to work in April 2009, Defendant had eliminated its second shift manufacturing operation at the Bradner facility, effectively laying off forty-three employees, including shop supervisors, engineering and sales employees, and office staff (Doc. No. 22-1 at 2).

Plaintiff resumed her full-time position in May 2009 (Doc. No. 70 at 13–14), and Swaisgood reverted back to her position as a part-time employee (Doc. No. 72-3 at 2). Plaintiff assumed most of her former duties, with the exception of processing worker's compensation and FMLA claims (Doc. No. 70 at 29).

In May 2009, AWV's General Manager, Paul Quinlan, met with Stewart Reed, Defendant's Chief Operating Officer, John Paletar, Bradner's new plant manager, and Dave DeBell, Defendant's Vice President of Human Resources (Doc. No. 22-1 at 5). The group discussed the need for additional cost savings and subsequently decided to combine the Bradner facility with Defendant's facility in Holland, Ohio (Doc. No. 22-1 at 2, 5). As a result, several positions were eliminated, including an office clerical employee assigned to the purchasing manager, a customer service position, and a quality and safety supervisor (Doc. No. 22-1 at 5–6).

Defendant also decided to consolidate the human resource functions of the Bradner and Holland facilities (Doc. No. 22-1 at 6). This brought Plaintiff's position under direct review, as well as that of Lea Kinshaw, the Administrative Manager of the Holland plant. Like Plaintiff, Kinshaw was a longtime employee of Defendant and the AWV Division, and served in a similar capacity as Plaintiff since 1984 (Doc. No. 22-1 at 7). In addition to the human resources expertise possessed by both Kinshaw and Plaintiff, Kinshaw had experience with freight, accounts receivable, and accounts

3

payable (Doc. No. 22-1 at 7). Quinlan determined Kinshaw could perform a broader array of functions and was capable of taking additional responsibilities (Doc. 22-1 at 7). Because Defendant deemed Kinshaw as the "stronger asset," she was selected to oversee the human resource functions of the consolidated facilities while Plaintiff was laid off (Doc. No. 22-1 at 7–8). Plaintiff was fifty-six (56) years old at the time of her discharge (Doc. No. 1 at 2).

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

## AGE DISCRIMINATION

The ADEA prohibits employers from discharging employees on the basis of age. 29 U.S.C. § 623(a)(1). There are two alternative ways for Plaintiff to meet her evidentiary burden to prove she was discharged in violation of the ADEA. An employee may prove a violation of the ADEA by offering either direct or indirect evidence of age discrimination. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). Direct evidence of discrimination is evidence "which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the

employer's actions." *Id.* (citing *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). If Plaintiff cannot establish age discrimination through direct evidence, she may prove her case indirectly through circumstantial evidence -- i.e., evidence "that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.*; *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (internal quotations omitted).

### *Plaintiff Cannot Establish Age Discrimination By Direct Evidence*

To set forth a case of age discrimination using direct evidence, Plaintiff must present evidence which, if believed, requires the conclusion that age discrimination was at least a motivating factor in Defendant's decision to discharge her. *See Wexler*, 317 F.3d at 570.

Plaintiff's alleged direct evidence of unlawful age discrimination stems primarily from a June 5, 2009 e-mail from Quinlan to Reed concerning AWV's productivity. In this e-mail, Quinlan writes, "AND putting in place steps to successfully replace long term employees with succession planning." (Doc. No. 63 at 1). Plaintiff takes this phrase completely out of context. In his e-mail, Quinlan is referring to long range planning and continuity of business -- not the termination of specific employees. The e-mail goes on to discuss the fear surrounding AWV's lack of cross-training amongst employees and the concern with "losing a long term employee and not having the skills in place to close the gap." (Doc. No. 63 at 1). Although Quinlan does mention the consolidation of the Bradner and Holland human resource functions and the elimination of two human resources employees, he does not mention Plaintiff in any way (Doc. No. 63 at 1). This is not direct evidence of age discrimination; there is no mention of age or of Plaintiff. *See Wexler*, 317 F.3d at 570.

5

Significantly, in her deposition, Plaintiff admits Defendant did not comment or insinuate in any manner Plaintiff was being terminated because of her age (Doc. No. 20-1 at 25). In fact, according to Plaintiff, her termination was retaliation for taking FMLA leave (Doc. 20-1 at 22), a claim she has chosen not to pursue.

### *Plaintiff Cannot Establish Age Discrimination Through Indirect Evidence*

Absent direct evidence, Plaintiff asserts she can prove age discrimination based on circumstantial evidence. Claims supported by indirect evidence are subject to the familiar *McDonnell Douglas* burden-shifting framework, under which Plaintiff bears an initial burden of establishing a prima facie case of discrimination. *Geiger*, 579 F.3d at 622–23; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). The burden then shifts to Defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008) (quoting *Newman v. Fed. Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001)). If Defendant succeeds in this task, the burden shifts back to Plaintiff to demonstrate Defendant's proffered reason was not its true reason, but merely pretext for unlawful discrimination. *Arendale*, 519 F.3d at 603 ; *see also Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994) ("[O]nce the employer has come forward with a nondiscriminatory reason for [its actions] the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation.").

<u>Plaintiff Fails to Set Forth a Prima Facie Case</u>

To establish a prima facie case of age discrimination, Plaintiff must show she: (1) was a member of a protected class; (2) was discharged; (3) was qualified for the position held; and (4) was replaced by someone outside of the protected class. *Geiger*, 579 F.3d at 622. Additionally, because the discharge arises out of an alleged reduction in workforce, the fourth element is modified to require

Plaintiff to provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [Plaintiff] for discharge for impermissible reasons." *Barnes v. Gen Corp, Inc.*, 869 F.2d 1457, 1465 (6th Cir. 1990).

It is undisputed Plaintiff is within a protected class, was qualified for her job, and having been discharged, undoubtedly suffered an adverse employment action (Doc. 20-5 at 20). While Defendant concedes as much, it argues Plaintiff cannot met her burden with respect to the fourth element of her prima facie case. This Court agrees.

Plaintiff fails to meet her burden under the fourth element for two reasons. First, Swaisgood, the individual Plaintiff alleges replaced her, is not "someone outside of the protected class" as required under the fourth element. *Geiger*, 579 F.3d at 622. The ADEA contains a statutory age limit -- it only applies to "individuals who are at least 40 years of age." 29 U.S.C. § 631. Therefore, the protected class in ADEA cases consists of individuals who are at least forty years old. While Swaisgood is "younger" than Plaintiff, she was forty-three years old when Plaintiff was discharged and was thus a member of Plaintiff's protected class. There is no allegation Plaintiff was replaced by anyone outside of her protected class. Inexplicably, neither party brought this salient fact to the Court's attention. Plaintiff's claim thus fails -- even if Swaisgood did in fact replace her.

Second, nothing in the record supports the conclusion Plaintiff was replaced at all following her discharge. Plaintiff asserts, upon her discharge, Swaisgood, a part-time employee, was promoted to a full-time position and was assigned some of Plaintiff's responsibilities. Although Swaisgood did go from part-time to full-time employment following Plaintiff's discharge, she did not *replace* Plaintiff. As the court in *Barnes* held:

> [A]n employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

896 F.2d at 1465 (citing *Sahadi v. Reynolds Chemical*, 636 F.2d 116, 117 (6th Cir. 1980)).

After consolidating its Holland and Bradner facilities, Defendant determined human resource functions could be consolidated into a single department due to downsizing (Doc. No. 20-5 at 21–22). As discussed above, Kinshaw was deemed the superior candidate and selected to oversee the consolidated department -- not Swaisgood. Furthermore, while Swaisgood's work hours did increase, she did not assume all of Plaintiff's responsibilities. For instance, Swaisgood did not assume the responsibility of handling worker's compensation matters, interfacing with the Union, or reviewing and approving FML and disability requests -- those tasks were redistributed among other employees. In addition to her new responsibilities, Swaisgood continued to handle her routine clerical tasks.

Plaintiff's discharge was not unlawful age discrimination. Defendant's actions fit squarely into the acceptable reorganization process set forth in *Barnes*. "[E]vidence must be sufficiently probative to allow a factfinder to believe that [Defendant] intentionally discriminated against [Plaintiff] because of age." *Barnes*, 896 F.2d at 1466. Here, there is no such evidence. Accordingly, Plaintiff fails to meet her burden under the fourth element and cannot establish a prima facie case.

### Defendant Had A Legitimate, Non-discriminatory Justification and Plaintiff Has Not Established Pretext

Even if Plaintiff satisfied her prima facie case, her age discrimination claim would still fail. Defendant produced ample evidence supporting a legitimate, non-discriminatory reason for Plaintiff's termination. Specifically, Defendant discharged Plaintiff due to a necessary reduction in workforce -- not her age. Aside from Plaintiff's termination, Defendant closed five of its manufacturing plants,

8

consolidated the Holland and Bradner facilities, and eliminated the entire second shift at the Bradner plant, an action that resulted in the termination of over forty company employees. Even after Defendant's initial round of layoffs was completed, it was forced to find additional cost savings. These cost savings required the termination of Plaintiff and three other employees.

Defendant's proffered explanation for discharging Plaintiff is "clear and reasonably specific," and "is arguably supported by admissible evidence which would allow the trier of fact rationally to conclude that the employment decision [was] not motivated by discriminatory animus." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 392 (6th Cir. 2008) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 257–58 (1981)). The final burden therefore shifts to Plaintiff to prove Defendant's stated reasons for the discharge is in fact a pretext designed to hide discrimination. *Arendale*, 519 F.3d at 603.

Pretext may be established "either directly by persuading the [fact-finder] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *White*, 533 F.3d at 392–93 (internal quotations omitted). Thus, Plaintiff can demonstrate pretext by showing Defendant's stated reason (1) had no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain Plaintiff's termination. *Id*. Plaintiff can also meet her burden by offering evidence which challenges the reasonableness of Defendant's decision "to the extent that such an inquiry sheds light on whether [Defendant's] proffered reason for the employment action was its actual motivation." *Id*. (quoting *Wexler*, 317 F.3d at 578).

Plaintiff does not contest Defendant was experiencing financial difficulties requiring a reduction in its workforce. As discussed above, Defendant chose to eliminate duplicate positions that occurred as a result of consolidation. This brought Plaintiff and her Holland counterpart under review. After taking into account both candidates' capabilities and past job performance, Defendant chose to retain Kinshaw, given her additional expertise, over Plaintiff.

9

Likewise, Plaintiff has not shown Defendant's stated reason was a pretext for her discharge, and cannot challenge the reasonableness of Defendant's decision. For the former, Plaintiff cites three alternative reasons for her termination: (1) she had been labeled a "problem employee;" (2) Rebecca Forget, a human resources manager, did not like her; and (3) the decision to terminate her was made long before actual notice was given. Not only does Plaintiff lack record support for any of these theories, none are based on unlawful age discrimination.

## CONCLUSION

There is nothing in the record to suggest Plaintiff was anything other than an unfortunate casualty of declining economic conditions. For the foregoing reasons, Defendant Mestek, Inc. is entitled to summary judgment with respect to its state and federal age discrimination claims.

IT IS SO ORDERED.

        s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

December 8, 2011